IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PATRICK J. HAWTHORNE, JR.,

                Plaintiff,                      OPINION AND ORDER

v.

                                              21-cv-574-wmc

DEPUTY L. DAHNERT,
A NEDANOSKI,
and T. SCHROEDER,

                Defendants.

---

*Pro se* plaintiff Patrick J. Hawthorne, Jr., alleges that three officers at the Jefferson County Jail failed to protect him from assault by another inmate. (Dkt. #27.) Defendants move for summary judgment on the ground that Hawthorne failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). (Dkt. #40.) The court agrees and, therefore, must grant defendants' motion.[1]

FACTS

**A. Background**

Under the PLRA, "[a]n inmate complaining about prison conditions must exhaust administrative remedies before filing suit." *Conyers v. Abitz*, 416 F.3d 580, 584 (7th Cir. 2005). "Exhaustion requires complying with the rules applicable to the grievance process at the inmate's institution." *Id.*; *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and

---

[1] Hawthorne has filed a sur-reply. (Dkt. #56.) Although he did not seek the court's permission before filing it, the court has considered his arguments in light of his *pro se* status and because those arguments do not change the result.

at the time, the prison's administrative rules require."). The PLRA's exhaustion requirement is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Failure to exhaust requires dismissal of a prisoner's case without prejudice. *Miles v. Anton*, 42 F.4th 777, 780 (7th Cir. 2022).

In fairness, inmates are only required to exhaust administrative remedies that are available to them. *Ross v. Blake*, 578 U.S. 632, 642 (2016). "[A]n administrative procedure is at unwilling to provide any relief to aggrieved inmates." *Id.* at 643. Also, an administrative procedure is unavailable when it is "so opaque" that "no ordinary prisoner can discern or navigate it." *Id.* at 643-44. Finally, an administrative procedure is unavailable if prison and jail officials "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

In this case, however, it is undisputed that Hawthorne received a copy of the jail's rulebook when he was booked on May 30, 2021, and that he knew how to file and exhaust grievances.[2] (Dkt. #42-2.) The rulebook states that an inmate "may present a written grievance in a timely manner" about a perceived violation of his constitutional or state-law rights and will receive a return reply. (Dkt. #42-1 at 10.) The grievance form includes space for the inmate to describe the circumstances at issue and indicate whether he had

---

[2] In their brief in support, defendants list the grievances Hawthorne filed with the jail before and after the incident at issue in this case. (Dkt. #41 at 3.) In response, Hawthorne points out that the November 22, 2019, grievance was filed by another inmate with a similar name and leaps to the conclusion that the inclusion of this grievance amounts to "bad faith." (Dkt. #43 at 4.) However, the court concludes that the inclusion of this grievance was inadvertent error, as defense counsel explains in reply (dkt. #48 at 6 n. 5), was not considered by this court it in resolving defendants' motion for summary judgment, and regardless, would have been immaterial in deciding defendants' motion.

2

attempted to resolve the problem with a deputy first. (*See* dkt. #42-3 at 1.) Once a form is filed, the grievance procedure affords detainees and inmates three stages of review, by: (1) a jail deputy, (2) then a shift sergeant, and (3) ultimately a jail captain. On the grievance form, an inmate can also indicate whether the grievance is subject to an initial review, or on appeal. (*Id.*)

### B. Incident and Grievance

In this lawsuit, the court granted Hawthorne leave to proceed against defendants for their alleged failure to protect him from an inmate assault that took place on July 28, 2021. In the days leading up to the incident, Hawthorne and this inmate argued in their pod over whether Hawthorne was a "snitch." (Dkt. #26 at ¶ 5.) On the morning of the assault, Hawthorne alleges that he alerted defendants that this inmate was threatening him, but defendants took no action. (*Id.* at ¶¶ 8-16.) Following the assault, Hawthorne was moved to another pod, and the other inmate was placed in segregation.

Hawthorne filed an initial grievance about the July 28 incident on August 4, 2021. (Dkt. #50-1 at 2.) He stated that:

> I was Attack by a prison inmate here and after the attack no jail staff here came to ask me was I ok and did not act reasonable as if they cared. No investigation took place a lot of negligence took place. When it happen I was moved to another pod that was it. The carelessness is so bad that my Eighth Amendment Rights are violated and would like an administrative grievance.

A sergeant responded that jail staff did investigate and denied Hawthrone's grievance, at least in part because Hawthorne was not disciplined, while the other inmate served lock

3

down time for his attack. Nevertheless, Hawthorne appealed, stating that:

> the fact is … they did not do an investigation until I told them I wanted to press charges and now trying to reverse things back on me [despite my being] attack[ed]. The issues I'm having … [are] staff showed negligence when I tell you all stuff whats wrong I get nothing but the story back told to me that's getting old.

(Dkt. #42-3 at 1.)

Captain Gray also denied this appeal, explaining that the jail conducted an investigation and sent its report to the district attorney for review. The captain further asserted that Hawthorne "continually put [himself] back into the situation" with the other inmate, did not request medical treatment at the time of the incident and had since been seen. (*Id.*)

OPINION

As an initial matter, an institution's being made aware of an incident, because a prisoner filed a grievance exhausted on one issue related to the incident, is not necessarily sufficient to exhaust all other issues related to the incident. *See Bowers v. Dart*, 1 4th 513, 517-18 (7th Cir. 2021) (plaintiff who filed a grievance about an attack but did not present allegations that jail employees ignored a risk of assault did not exhaust his failure-to-protect claims); *Schillinger v. Kiley*, No. 16-cv-529-wmc, 2018 WL 1973151, at *2 (W.D. Wis. April 26, 2018), *aff'd*, 954 F.3d 990 (7th Cir. 2020) (plaintiff's only complaint about an inmate attack lacked any allegation that the defendants knew in advance he might be subject to an attack and did not exhaust plaintiff's failure-to-protect claims); *Farina v. Anglin*, 418 F. App'x 539, 543 (7th Cir. 2011) (plaintiff who filed grievances related to medical care following a rape was insufficient to exhaust a claim that the defendants failed

4

to protect him from being raped). That is because an inmate's grievance will suffice for exhaustion purposes only if it provides notice of "the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002).

In this case, Hawthorne's grievance did not provide notice of a failure-to-protect claim; instead, his grievance complained generally about how staff responded or failed to respond *after* the attack, including the lack of any investigation, and his being blamed for the incident. In sur-reply, Hawthorne argues that the court found he had exhausted his remedies when it screened his claims to proceed, but the court never addressed the question in its screening order. (*See* dkt. #27.) Hawthorne also argues that his use of "key words" and phrases including "attack," "negligence," "carelessness," and "Eighth Amendment rights" in his grievance was enough to put the jail on notice that he was raising failure-to-protect claims. (Dkt. #56 at 2.) Yet his grievance does not name any of the defendants, and his references to negligence, carelessness and his Eighth Amendment rights are general and vague, without indication that he is alleging anything about what occurred before the attack, or that he is specifically complaining about a failure to protect. *See King v. Dart*, 63 F.4th 602, 608 (7th Cir. 2023) (one of the purposes of exhaustion is to give the jail a fair opportunity to address the inmate's complaint). Indeed, the grievance focuses on Hawthorne's general dissatisfaction with jail staff's response in the aftermath of the incident.

Hawthorne's other arguments in opposition are also unavailing. *First*, he argues that video of the incident shows that his claims have merit, but the question at this stage is whether he exhausted his claims in the first instance. *Second*, Hawthorne suggests that

5

there was no possible relief available to him, but his "perception that exhaustion would be futile does not excuse him from the exhaustion requirement." *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005). *Third*, and finally, he cites to *Fletcher v. Menard Correctional Center*, 623 F.3d 1171 (7th Cir. 2010), as supporting his argument that he is not required to exhaust his administrative remedies beyond telling staff that he was at risk of assault because he was in imminent danger. However, *Fletcher* did not hold that any inmate in imminent danger is always exempted from exhausting administrative remedies. To the contrary, *Fletcher* held that imminent danger did *not* excuse a duty to exhaust *unless*: (1) there are no administrative remedies that can redress an immediate danger to inmate health or safety; *or* (2) administrative remedies are unavailable. *Id.* at 1173; *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA.").

Here, Hawthorne could have but filed a grievance in the days leading up to the attack when he was in conflict with the other inmate. Had he done so, the jail could have investigated the grievance and separated the inmates. Regardless, when Hawthorne did file his grievance, he was no longer in imminent danger because he had been separated from the other inmate after the assault and transferred to a different pod. Accordingly, the court must conclude that administrative remedies *were* available to him, and Hawthrone simply chose to pursue other claims.

Said another way, while Hawthorne's grievance provided jail staff notice of and the opportunity to investigate the delay between the attack and the staff's response, it did *not* notify the jail that any staff had reason to know about the other inmate's threatened attack

6

on Hawthorne *before* the attack occurred or a failure to prevent that attack once on notice. Consequently, Hawthorne failed to exhaust his Eighth Amendment failure-to-protect claims against defendants. As these are the only claims upon which Hawthorne was allowed to proceed, the court must dismiss this lawsuit without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is always without prejudice). However, should Hawthorne attempt to exhaust his grievance against defendants now, it may well be doomed as time barred. (*See* dkt. #41-1 at 10 (noting that grievances must be presented "in a timely manner")).

ORDER

IT IS ORDERED that defendants' motion for summary judgment based on plaintiff's failure to exhaust administrative remedies (dkt. #40) is GRANTED and this lawsuit is DISMISSED without prejudice.

Entered this 1st day of November, 2023.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge